UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re: ) | |
| ) | |
| BYUNG H. KIM ) | Case No. 08-12266-SSM |
| KUM N. KIM ) | Chapter 13 |
|         Debtors ) | |

**MEMORANDUM OPINION**

A hearing was held on November 26, 2008, on the chapter 13 trustee's objection to confirmation of the debtors' plan.[1] The debtors were present at the hearing and were represented by their attorney of record. The trustee objected to confirmation of the plan on several grounds, including lack of good faith. After receiving testimony and hearing argument, the court took the objection under advisement. For the reasons stated, the court agrees that the plan was not proposed in good faith and will therefore deny confirmation.

Background

The debtors, who are husband and wife, filed a joint chapter 13 petition in this court on April 24, 2008, less than one month after the dismissal of a previous chapter 13 case. The first case, Case No. 04-12708-SSM, was filed on June 23, 2004, and was dismissed on March 27, 2008, after the debtors fell behind in making plan payments and their motion to modify their confirmed plan was denied. The new case was assigned to the Honorable Robert G. Mayer, United States Bankruptcy Judge. The debtors filed the chapter 13 plan that is now before the

---

[1] At the time the objection was filed, the trustee was Gerald M. O'Donnell. Effective October 1, 2008, Mr. O'Donnell retired after more than 40 years of distinguished service as standing chapter 13 trustee in the Alexandria Division of this court, and Thomas P. Gorman has been appointed trustee in his place.

court on May 12, 2008, and the plan was provisionally confirmed by Judge Mayer over the trustee's objection so that distributions to creditors could commence. Judge Mayer then set a final hearing on the objection to confirmation and reassigned this case to the undersigned judge.

The debtors' schedules reflect $185,679 in assets, of which $180,000 consists of real property in Washington, D.C., held as tenants by the entirety. Located on this property is the debtors' place of business, a carry-out restaurant. The debtors claim the entire equity as exempt under § 522(b)(3)(B) of the Bankruptcy Code. Scheduled liabilities total $149,227, of which $123,398 consists of nonpriority unsecured claims. The debtors report income—all of it from the operation of their business—of $2,545 per month, and living expenses of $1,773 per month, for a net monthly income of $772.

Under the plan filed by the debtors on May 12, 2008, they would pay the trustee $770 per month for 60 months, with the estimated divided on unsecured claims being 10 cents on the dollar. Both the plan and the schedules list a tax debt owed jointly by the debtors to the Commonwealth of Virginia as a priority claim in the amount of $1,432.35[2], and the plan provides for "pro rata" payment of this claim.[3] The debtors have three secured debt upon which

---

[2] The priority amount of the claim is actually less than the amount listed in the schedules and the plan. The Commonwealth of Virginia filed a timely proof of claim in the amount of $2,426.16, with the priority amount of the claim totaling $1,000 and the unsecured nonpriority amount totaling $1,426.16.

[3] The plan provision for "pro rata" payments of the priority and secured claims is a complete misuse of the term. The phrase "pro rata" means "proportionately according to an exactly calculable factor (as share or liability)." Webster's Ninth New Collegiate Dictionary 944 (1985). It is properly applied only to claims that are being paid at less than 100 cents on the dollar. The standard form of chapter 13 plan in this district, for example, is a "pot plan" in which nonpriority unsecured creditors receive a pro rata distribution of what remains in the "pot" after priority and secured claims are paid in full. Thus, if plan funding is sufficient to pay only 30 percent of all general unsecured claims, each unsecured creditor receives 30 cents on the dollar and is paid at
(continued...)

they are jointly liable. The first is a purchase money loan secured by a 2001 Nissan Sentra. The plan and schedules show the balance due on the loan as $2,285.77, with the replacement value of the vehicle being $4,250. The debtors propose to pay the claim in full with interest at 9.5% per annum over 36 months in monthly installments of $73.22. The second secured debt is a statutory lien (otherwise undescribed) held by the District of Columbia government for $15,141.48. The plan proposes to pay this debt, without interest, by monthly "pro rata" payments through the trustee over the 60 month term of the plan. The final secured debt is a mortgage on the Washington, D.C., real property for $6,969.87. The plan provides for the trustee to pay this claim, again "pro rata," with interest at 7% per annum over 60 months.

On June 16, 2008, the chapter 13 trustee filed an objection to confirmation of the plan. His objection was based on three grounds. First, he objected that the plan was not filed in good faith because it was simply an attempted end-run around this court's ruling that denied confirmation of a modified plan in the prior case. Second, the trustee objected that the plan failed the liquidation test under § 1325(a)(4), Bankruptcy Code, because the equity the debtors have in the Washington D.C., real property exceeds the proposed payment to unsecured creditors. Finally, the trustee objected that the plan is not feasible under § 1325(a)(5),

---

[3](...continued)
the same rate (that is, the same percentage of its allowed claim each month) as other unsecured claims. Priority and secured claims, however, must be paid in full (and secured claims with interest). *See* §§ 1322(a)(2) and 1325(a)(5)(B)(ii), Bankruptcy Code. The payments on secured claims, moreover, must be "in equal monthly amounts." § 1325(a)(5)(B)(iii)(I), Bankruptcy Code. Thus, the allowed amount of a priority or secured claim, the rate of interest on a secured claim, and the period over which the claim is to be paid, *exactly determines* the monthly amount the creditor must receive. The use of the phrase *pro rata* to mean (apparently) "to be calculated by the trustee and paid concurrently with other claims" is therefore technically improper and should not be repeated by debtor's counsel in the future.

Bankruptcy Code, asserting that the debtors lack the financial ability to formulate a plan of reorganization.

At the evidentiary hearing, Mrs. Kim testified—largely in generalities and with a notable lack of detail—regarding the filing of the present case and the proposed plan.[4]  She stated that the primary reason why she and her husband filed this case and their prior case was because business was very slow which was compounded by illnesses that caused the debtors to close their business when they were sick.  Mrs. Kim testified that the debtors tried to sell the business at one point, and despite the fact that some individuals visited the property, no one expressed interest in buying the business and the property.  Finally, Mrs. Kim explained that the reason why they had not paid their real estate and other taxes was because they did not have sufficient income to do so after paying living expenses and making monthly payments to the trustee in their prior case.  She did not testify to *any* changes in her and her husband's financial condition between the denial of the plan modification motion in the prior case and the filing, one month later, of this case.

## Discussion

The chapter 13 trustee, as noted, has raised three grounds in his objection to confirmation: (1) lack of good faith in proposing the plan, (2) violation of the "best interests of creditors test," and (3) lack of feasibility.  The court will discuss these grounds in reverse order.

---

[4]  To be fair, neither Mr. nor Mrs. Kim is particularly fluent in English.  To the extent language was an issue, however, counsel could and should have arranged for an interpreter.

4

I.

Before a chapter 13 plan may be confirmed, the court must find that the debtor "will be able to make all payments under the plan and to comply with the plan." § 1325(a)(6), Bankruptcy Code. The trustee asserts that the debtors lack the financial ability to formulate a chapter 13 plan. While the trustee argued at the hearing that the debtors' 2007 tax returns shows a lower gross income than reported on the schedules, the returns themselves were never placed in evidence, and the trustee did not present any other evidence of the debtors' lack of financial ability to formulate a plan. Accordingly, the trustee's feasibility objection will be overruled.

II.

As his second ground for objecting to confirmation of the proposed plan, the trustee argues that the plan violates § 1325(a)(4) of the Bankruptcy Code because unsecured creditors would receive more in a chapter 7 liquidation than they would under the proposed plan. Specifically, the trustee noted that the debtors' schedules reflect more than $157,000 in equity in the real property—sufficient to pay unsecured claims at 100 cents on the dollar—while the plan proposes to pay unsecured creditors only approximately $12,000.

A chapter 13 plan must provide that:

> the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date[.]

§ 1325(a)(4), Bankruptcy Code. This requirement—that unsecured creditors receive payments having a present value at least equal to what they would receive if the debtor's estate were

liquidated under chapter 7—is commonly referred to as the liquidation test or best interest of creditors test.

The debtors argue, however, that because the real estate is held as tenants by the entirety, the equity would not be available to pay the unsecured creditors in a chapter 7 liquidation. The court must concur. Under § 541(a) of the Bankruptcy Code, the commencement of a bankruptcy case creates an estate comprised "of all of the following property, wherever located and by whomever held: (1) ... all legal or equitable interests of the debtor in property as of the commencement of the case." This includes a debtor's interest in property held as tenants by the entireties. *Greenblatt v. Ford,* 638 F.2d 14 (4th Cir. 1981). However, a debtor may exempt—and thus hold free from the claims of most creditors—certain property. This includes an interest in property held as tenants by the entirety "to the extent such property is exempt from process" under state law. § 522(b)(3)(B), Bankruptcy Code. Under both District of Columbia and Virginia law, real estate held as tenants by the entireties is not liable for the debts of either spouse alone but can only be reached for their joint debts. *Held v. McNett*, 154 A.2d 349, 350 (D.C. 1959); *Vasilon v. Vasilon*, 192 Va. 735, 66 S.E.2d 599 (1951).[5] The exemption is preserved even if the spouses file a joint bankruptcy petition. *In re Bunker*, 312 F.3d 145 (4th Cir. 2002). Accordingly, although a chapter 7 trustee may administer tenancy by the entireties property, he or she may do so only for the benefit of creditors holding joint claims against husband and wife. *Williams v. Peyton (In re Williams)*, 104 F.3d 688 (4th Cir. 1997); *Sumy v. Schlossberg*, 777 F.2d 921 (4th Cir. 1985).

---

[5] Because Virginia and District of Columbia law is the same regarding the immunity of real property held as tenants by the entireties for the individual debts of a spouse, the court need not determine which jurisdiction's law would apply.

In their schedules, the debtors claimed the Washington, D.C., property exempt under § 522(b)(3)(B) of the Bankruptcy Code. The value of the claimed exemption is listed as $157,888.65, with the value of the property being listed as $180,000. If this case were in chapter 7, a trustee would be able to administer the claimed exemption only for the benefit of joint creditors of the debtors. Of the 20 general unsecured creditors listed on the debtors' schedules, only one creditor is listed as holding a joint claim against the debtors, with the amount of the claim listed as $234. However, that creditor did not file a proof of claim in this case, and is therefore not entitled to payment under the proposed plan. Because there are no general unsecured creditors holding joint claims who have filed a proof of claim in this case, the property could not be administered in chapter 7 for the benefit of the remaining general unsecured creditors. For that reason, the plan does not fail the "best interests of the creditors test" under § 1325(a)(4) of the Bankruptcy Code.

III.

Finally, the trustee objects to confirmation based on the good faith provisions of the Bankruptcy Code, arguing that the debtors, in proposing a plan that, if anything, is less favorable to unsecured creditors than the modified plan the court declined to confirm in the prior case, are simply seeking to circumvent that ruling. Specifically, the trustee argues that the debtors propose a severe compromise of unsecured creditors at 10 cents on the dollar, while preserving—indeed enhancing—their substantial equity in the Washington, D.C., real property.[6]

---

[6] Unlike the more typical chapter 13 situation in which debtors propose a plan to cure mortgage arrears while continuing to make on-going mortgage payments that extend beyond the term of the plan, the mortgage here matured prior to the filing of the chapter 13 case, and the plan proposes—as it must—to pay the entire remaining balance over the term of the plan. Thus, upon completion of the plan, the debtors will own the Washington, D.C., property free and clear.

The trustee noted that the confirmed plan in the prior chapter 13 case allowed for a return of 31% to unsecured creditors, and that the debtors' motion to modify the plan by reducing the plan payments was denied.

In the prior case, the plan was confirmed at $1,280 per month.[7] The debtors, after falling more than $13,000 behind in plan payments, then filed—in response to a motion by the chapter 13 trustee to dismiss the case for failure to make payments—a motion to modify the confirmation order. Specifically, the debtors sought a decrease in the plan payments to $800 per month and a waiver of the $13,398 in plan payment arrears. The reduction in payments and the waiver of the arrears would have decreased the dividend being paid on unsecured claims from 31 cents on the dollar to an estimated 15 cents on the dollar. These proposed modification was denied due to an insufficient showing of changed circumstances since the plan was confirmed, and the case was dismissed.

Under § 1325(a)(3) of the Bankruptcy Code, a plan must be "proposed in good faith and not by any means forbidden by law." Whether a plan has been proposed "in good faith" is an "elastic" concept that requires a factual determination on a case-by-case basis. *Deans v. O'Donnell*, 692 F.2d 968, 972 (4th Cir. 1982); *In re Hurdle*, 11 B.R. 304, 306 (Bankr. E.D. Va. 1981); *Hardin v. Caldwell* (*In re Caldwell*), 851 F.2d 852, 858 (6th Cir. 1988); *Goeb v. Heid* (*In re Goeb*), 675 F.2d 1386, 1390 (9th Cir. 1982); *Ravenot v. Rimgale* (*In re Rimgale*), 669 F.2d 426, 431 (7th Cir. 1982); *Smyrnos v. Padilla* (*In re Padilla*), 213 B.R. 349, 352 (9th Cir. 1997). Such a determination cannot be made in a vacuum, but rather, the court must examine the practical effect of the plan. *State Education Assistance Authority v. Johnson*, 43 B.R. 1016,

---

[7] The debtors had proposed a payment of $1,162 per month but did not oppose the trustee's motion to confirm the plan at $1,280 per month.

8

1022 (E.D. Va. 1984). Additionally, once the debtor's good faith has been questioned by means of an objection, the debtor has the burden of proving that the plan satisfies the good faith test. *Thomas v. Daniel (In re Daniel)*, 260 B.R. 763, 767 (Bankr. E.D. Va. 2001); *Estate of Kuchik v. Belt (In re Belt)*, 106 B.R. 553, 564 (Bankr. N.D. Ind. 1989); *Fidelity & Casualty Company of New York v. Warren (In re Warren)*, 89 B.R. 87, 93 (9th Cir. BAP 1988); *In re Padilla*, 213 B.R. at 352. In this connection, the Fourth Circuit has suggested the following non-exclusive factors as being relevant to a determination of good faith:

> (1) the percentage of proposed repayment;
>
> (2) the debtor's financial situation;
>
> (3) the period of time in which payments will be made;
>
> (4) the debtor's employment history and prospects;
>
> (5) the nature and amount of unsecured claims;
>
> (6) the debtor's past bankruptcy filings;
>
> (7) the debtor's honesty in representing facts;
>
> (8) any unusual or exceptional problems facing the particular debtor.
>
> (9) whether a major portion of the claims sought to be discharged arises out of pre-petition fraud or other wrongful conduct and the debtor proposes only minimal repayment of those claims; and
>
> (10) whether, despite even the most egregious pre-filing conduct, the plan nevertheless represents a good faith effort by the debtor to satisfy creditors' claims.

*Deans v. O'Donnell*, 692 F.2d at 972; *Neufeld v. Freeman*, 794 F.2d 149, 152-153 (4th Cir. 1986).[8] Additionally, this court has identified, as a relevant consideration in the context of serial

---

[8] The last two of the listed factors were identified in *Neufeld* and addressed the fact that prior to
(continued...)

or subsequent filings, the proximity in time between the two cases and whether the debtor has incurred some change in circumstances between the filings that suggests a second filing was appropriate and that the debtor will be able to comply with the terms of a chapter 13 plan. *In re Cushman*, 217 B.R. 470, 477 (Bankr. E.D. Va. 1998).[9]

While some of the *Deans* and *Neufeld* factors are either inapplicable in this case or do not cut against the debtors in finding that the present plan was proposed in good faith, the factors that do cut against the debtors lead the court to conclude that the present plan has not been proposed in good faith. The debtors filed their petition in the current case less than one month after denial of their motion to modify the confirmed plan in the prior case. Although the debtors have provided no evidence of *any* change in their financial condition since dismissal of their prior case, the plan that is currently before the court proposes an even lower monthly payment than the plan that was denied confirmation, and provides for a dividend to unsecured creditors of only 10 cents on the dollar[10] over a five year period. In the absence of changed circumstances,

---

[8](...continued)
the amendments made by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 Pub.L. 109-8, 119 Stat. 23 ("BAPCPA") a chapter 13 discharge extended to a large number of debts (including those arising from fraud, larceny, embezzlement, and fiduciary defalcation) that would be nondischargeable in chapter 7, with the result that a chapter 13 discharge was often colloquially referred to as a "super discharge." BAPCPA conformed a chapter 13 discharge more closely to a chapter 7 discharge, although there are still a few categories of debts that can be discharged in chapter 13 but not in chapter 7. Thus, the factors identified in *Neufeld* remain a consideration, although less so than under prior law.

[9] *Cushman* addressed specifically a so-called "chapter 20" filing in which a debtor first files a chapter 7 case to eliminate unsecured debts (or the bulk of them) and then files a chapter 13 case to pay the secured claims and any nondischargeable unsecured claims (such as priority tax debts). Since the debtors here did not receive a discharge in their prior case, some of the concerns addressed in *Cushman* are not present here.

[10] The court does note that it is arguably misleading to look at this plan in isolation and say that
(continued...)

the court cannot find that a plan that is essentially indistinguishable from a plan that was previously denied confirmation has been proposed in good faith. The result is not changed simply because the plans are filed in different cases. To the extent that the debtors disagreed with the prior ruling, their remedy was to appeal, not to suffer dismissal and refile in an transparent effort to evade the ruling.

In the present case, there is the additional consideration that confirmation of this plan would effectively result in the unsecured creditors being held at bay for nine years—four years in the prior case, and five years in the present case—while being paid them only a fraction of their allowed claims. In this connection, the court notes that a chapter 13 plan may not provide for payment over a period exceeding five years. § 1322(d)(1) & (2), Bankruptcy Code. The present case and the prior case address the same body of claims. Treating the two bankruptcies as one in substance, the proposed plan would permit the debtors to accomplish a result not permitted in either case standing alone—effectively a 108-month plan—thereby manipulating the bankruptcy system in a way that abuses the purpose and spirit of the Bankruptcy Code. Accordingly, the court will deny confirmation of the current plan as not having been proposed in good faith.

---

[10](...continued)
the general unsecured creditors get only 10 cents on the dollar. The chapter 13 trustee's final report and account filed in the debtors' previous case shows that general unsecured creditors received about 14 cents on the dollar over the course of the plan before the case was dismissed. Thus, those general unsecured creditors who were paid in the prior case (and who have filed proofs of claims in this case) would receive a total of approximately 24 cents on the dollar over the course of the two cases.

11

A separate order will be entered denying confirmation.

Date: _____     _____
                                   Stephen S. Mitchell
Alexandria, Virginia               United States Bankruptcy Judge

Copies to:

Byung H. Kim
Kum N. Kim
1400 South Joyce St., #501
Arlington, VA   22202
Debtors

Tommy Andrews, Jr., Esquire
Tommy Andrews, Jr., P.C.
122 North Alfred St.
Alexandria, VA   22314
Counsel for debtors

Thomas P. Gorman, Esquire
211 North Union Street, Suite 240
Alexandria, VA  22314
Chapter 13 trustee